**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| | **CRIMINAL ACTION** |
| **VERSUS** | |
| | **NO. 98-106-JWD-EWD** |
| **JAMES CHARLIE STANLEY** | |

**RULING AND ORDER**

This matter is before the Court on the *Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)* (Doc. 116) filed by Defendant James Charlie Stanley ("Defendant"). The United States (the "Government") opposes the motion (Doc. 123), and Defendant has filed a reply (Doc. 124). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion is denied.

**I.     Introduction**

On December 21, 1998, Defendant was convicted of interference with interstate commerce by robbery (Count 1), using and carrying a firearm during a crime of violence (Count 2), and being a felon in possession of a firearm (Count 3). (*Judgment*, Doc. 51 at 1.) Judge Ralph E. Tyson sentenced him to life imprisonment on Counts 1 and 3, to be served concurrently, and a term of 60 months on Count 2, to be served consecutively to Counts 1 and 3. (*Id.* at 2.) Defendant is housed at Coleman Federal Prison Complex ("Coleman"). (Doc. 116-1 at 1.)

Defendant now moves for compassionate release. Specifically, he moves "pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to reduce his sentence to time served with home confinement as a condition of supervised release." (*Id.*)

## II.    Discussion

### A.  Parties' Arguments

#### *1. Overview*

Defendant argues that there are extraordinary and compelling reasons for his release. Defendant committed the instant offenses at the age of forty-five, and he is now almost sixty-eight. He has COPD and a number of other health issues—hypertension, chronic ischemic heart disease, chronic hepatitis C, and chronic bronchitis, as well as multiple degenerative issues, including sciatica, arthritis, and cataracts. (Doc. 116-1 at 1.) Defendant represents that he's confined to a wheelchair and has respiratory problems so bad that he cannot propel that wheelchair by himself. He urges that all of these conditions justify release in light of "the COVID-19 pandemic and the spread of the virus in Coleman[.]" (*Id.*)

Defendant next contends that the relevant 18 U.S.C. § 3553(a) factors warrant a reduction in his sentence. (*Id.* at 12–14.) While his crime was severe, he is no longer a danger to the community, has a low risk of recidivism, could best obtain medical treatment in his daughter's care, and has made sincere efforts to rehabilitate himself while in BOP care. (*Id.*)

The Government concedes that his health condition is severe enough to constitute extraordinary and compelling reasons for release under the compassionate release statute, but the Government opposes the motion on three main grounds. (Doc. 123 at 1.) First, the Government asserts that the Defendant has failed to establish that he is "not a danger to the safety of any other person or to the community[.]"  (*Id.* at 13 (quoting U.S.S.G. § 1B1.13(2).)  Second, the Government maintains that, even if Defendant were eligible for compassionate release, the Court should exercise its discretion to deny relief because he has not shown that he would be significantly

2

safer in his daughter's home (*Id.* at 15.) And third, the Government argues that the Court should exercise its discretion and deny relief based on the § 3553(a) factors. (*Id.* at 17.)

### *2. Danger to the Safety of Any Other Person or to the Community*

The Government first opposes the motion by arguing that Defendant has not established that he is "not a danger to the safety of any other person or to the community[.]" U.S.S.G. 1B1.13(2). The Government points to the fact that the circumstances of the crime are particularly reprehensible—he robbed a restaurant, pointed the gun at the head of an employee and said she "better not" be hiding any money, then led the police on a high speed chase that culminated with him wrecking the car, all of which was done when the Defendant was in his forties. (Doc. 123 at 8.) The Government also cites Defendant's thirty-eight infractions in jail (most involving drugs or alcohol, refusing to submit to drug testing, refusing to obey orders, three incidents of possessing a dangerous weapon, three incidents of fighting, two incidents of assault without serious injury, one incident of threatening bodily harm, and one incident when he was age fifty-five of stabbing another inmate). (*Id.* at 13–14 (citing Doc. 123-1).) The Government urges that Defendant showed no remorse prior to filing this motion and that his handful of certificates of self-improvement courses and programs over 22 years is hardly strong evidence of rehabilitation. (*Id.* at 14.) Further, Defendant is not "too infirm" to be a danger, as he can still hold and shoot a gun and conspire with other law breakers. (*Id.*).

Defendant responds to this line of attack by emphasizing his terrible physical condition. (Doc. 124.) The crime happened over twenty years ago. (*Id.* at 1.) His last infraction in prison that was indicative of an inclination toward violence was twelve years ago. (*Id.* at 2–3.) He's also gone long stretches in custody with no infractions, and, in the past four years, all infractions have been minor. (*Id.* at 3.) Defendant may be able to hold a gun, but there's no indication he can get

3

one. (*Id*. at 2.) He plans to live with his daughter, her husband, and their three sons, and the daughter is adamantly against any guns. (*Id.*) Further, since Defendant has been incarcerated for twenty years, (1) it's unlikely he's still in contact with any of his alleged old criminal friends, and (2) it's even more unlikely that any "new generation of troublemakers is going to be interested in fraternizing with an elderly, disabled man." (Doc. 124 at 2.) Further, there's no indication of how Defendant would even be able to obtain illicit substances, since he will live with his daughter and cannot leave without her power. (*Id.* at 3.) As for lack of remorse, Defense counsel has only known Defendant for three months, and all people connected to this case have long retired. (*Id.*) Defense counsel urge that Defendant "turned the corner over a decade ago, following the loss of his beloved wife at a shockingly young age." (*Id.* at 4.) Defendant urges:

> Realistically speaking, the confluence of events that would be required to enable Stanley to return to his villainous ways is so unlikely as to be virtually impossible. Granting James Stanley early release poses no genuine threat to society. He is, to be blunt, a pitiful, decrepit man, old beyond his years, who is nothing but a burden on the BOP and a drain on their resources. Releasing him to the care and custody of his daughter will free up critical supplies and staff that could be best used in other manners. As such, it is in the best interest of James Stanley, of society, and of BOP to consign him to the care of Mrs. Ray.

(*Id.* at 4.)

### *3. Safety in BOP Custody Versus Safety At Home*

The Government next argues that Defendant has failed to establish that he would be safer at home than in custody. (Doc. 123 at 15.) The Government points to the BOP's considerable efforts to keep inmates safe. (*Id.*) Defendant also has "access to medical care, screening, and sanitation supplies, and his contact with others is strictly limited." (*Id*.) He is allowed to leave his cell three times a week for two hours for the shower, the telephone, and the computer. (*Id.*) When he does, masks are used, and social distancing is observed. (*Id.* at 16.) As Defendant argued, he rarely leaves his cell except for seeking medical care. (*Id.*) While Defendant has a "stable home

4

and supportive family awaiting his return home," (Doc. 116-1 at 13), his daughter and her husband work, and their kids go to school (Doc. 123 at 16).  Thus, Defendant will face exposure to COVID-19. (*Id.*)

Defendant largely relies on "[s]imple common sense" that (1) "it is easier to clean and sanitize an area used by half a dozen people than one used by several hundred" people (Doc. 124 at 6) and that (2) Defendant will be exposed to many more people in the custody of BOP (*Id*. at 4–6.)

### *4. Section 3553(a) factors*

Again, Defendant maintains that the relevant § 3553(a) factors warrant a reduction in his sentence. (Doc. 116-1 at 12.)  Defendant first cites his "advanced age and compromised physical health." (*Id.*)  Defendant's crime was severe, but he is no longer a danger to the community, has a low risk of recidivism, could best obtain medical care at home in his daughter's care, and has made sincere efforts to rehabilitate himself while in BOP care. (*Id.* at 12–14.)

The Government points to the nature and circumstances and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and deter others from committing similar crimes:

> Defendant committed a robbery at gunpoint (with a gun he was prohibited from possessing), put others in danger in a high-speed flight in a stolen car, and cursed the police when he was caught. One of the victims, an employee of the restaurant, was so traumatized by the event that she would immediately leave the room when a stranger entered. PSR at 5. The offenses followed a criminal history so serious that he was subject to a mandatory sentence of life imprisonment. In fact, the sentencing judge, the Honorable Ralph E. Tyson, aptly described defendant as incorrigible and "want[ed] it to be clear that it is the Court's anticipation that the life sentence will, in fact, be served and that you will not be subsequently released into this society." Doc. 55 at 10-11. During his incarceration, defendant has continued to be violent and disrespectful of authority, he has demonstrated no remorse for his past crimes, and he has made little effort to reform himself.

(Doc. 123 at 17–18.)

The Defendant responds with a lengthy attack on the Violent Crime Control Act of 1994 and the disproportionate effect that had on minorities and older felons sentenced under it. (Doc. 124 at 6–10.)  Defendant was sentenced under this act, which carried a mandatory life imprisonment. (Doc. 124 at 3.)

### B. Applicable Law

The compassionate release statute now provides:

**(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case--

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable*, if it finds that--

(i) extraordinary and compelling reasons warrant such a reduction; . . .

and *that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).[1]

Under 28 U.S.C. § 994(t), "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." "Accordingly, the relevant policy

---

[1] It is undisputed that Defendant exhausted his administrative remedies under this statute. (*See* Doc. 123 at 6.)

statement of the Commission is binding on the Court." *United States v. Clark*, 451 F. Supp. 3d 651, 655 (M.D. La. 2020) (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

U.S.S.G. § 1B1.13 contains the relevant policy statement. *Id.* This section provides:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, *after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable*, the court determines that--

(1) (A) Extraordinary and compelling reasons warrant the reduction; or (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) *The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)*; and

(3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added).

18 U.S.C. § 3142(g) provides:

(g) **Factors to be considered**.--The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including--

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug

7

> or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

Finally, the § 3553(a) factors include, inter alia, "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] (B) to afford adequate deterrence to criminal conduct[.]" 18 U.S.C. § 3553(a)(1), (2).

"Generally, the defendant has the burden to show circumstances meeting the test for compassionate release." *Clark*, 451 F. Supp. 3d at 656 (citing *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019)). Ultimately, however, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

### C. Analysis

Having carefully considered the matter, and after having received the advice of the U.S. Probation Office, the Court will deny Defendant's motion. Even if Defendant had established that he was no longer a danger to any other person or the community under U.S.S.G. § 1B1.13, Defendant's motion fails for two reasons.

First, Defendant has failed to show that the BOP's measures for dealing with COVID-19 are inadequate. The Government outlines the extensive measures the BOP has taken to combat the pandemic:

8

By April 1, 2020, BOP had implemented the following measures:

• <u>Securing inmates in their quarters</u>: For a 14-day period, inmates will be secured in their assigned cells/quarters to decrease the spread of the virus. During this time, to the extent practicable, inmates should have access to programs and services offered under normal operating procedures, such as mental health treatment and education. Limited group gathering will be afforded to the extent practical to facilitate commissary, laundry, showers, telephone, and computer access.

• <u>Quarantine/isolation of new inmates</u>: All inmates entering or reentering BOP from a non-BOP facility are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates are quarantined for at <u>least</u> 14 days or until cleared by medical staff; symptomatic inmates are isolated until testing negative for COVID-19 or until cleared for release pursuant to CDC guidelines.

• <u>Suspension of inmate movements</u>: Inmate movement is suspended with limited exceptions for necessary and mission-essential transfers.

• <u>Social distancing</u>: Facilities are required to maximize social distancing by, for example, staggering meal times, recreation, etc.

• <u>Issuance and use of PPE</u>: All BOP staff and inmates have been issued masks to use on a daily basis. Staff working in quarantine units are required to wear gloves and masks, and staff working in isolation units are required to wear gloves, masks, and gowns.

(Doc. 123 at 8–9) As *Clark* found, "there is no evidence before the Court that the BOP's plan to address the pandemic will not adequately protect inmates" like Defendant. *Clark*, 451 F. Supp. 3d at 657; *see also United States v. Alexander*, No. 14-126, 2020 WL 2468773, at *8 (M.D. La. May 13, 2020) (denying motion for compassionate relief in part because "Petitioner has failed to demonstrate that the BOP's measures for dealing with COVID-19 are inadequate.").

The strength of the BOP measures contrasts strongly with Defendant's failure to provide details about the safety measures at his daughter's home. This is particularly troubling given the fact that his daughter and husband work outside the home and their children go to school, so Defendant faces an arguably greater threat of exposure there than in the BOP's custody. In short, Defendant's reliance on "common sense" rings hollow.

Second, even if the BOP measures were inadequate, the Court would deny Defendant's motion because the § 3553(a) factors weigh against release. While the Court has considered all of the relevant factors and the totality of the circumstances, the Court finds most relevant (1) the history and characteristics of the defendant; (2) the nature and circumstances of the offense; and (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence.

As to the first, though the Court has taken into account Defendant's deteriorating health condition and the other facts he highlights (*see* Docs. 116-6, 120-1), the Court has also considered Defendant's considerable criminal history. His criminal conduct began at approximately seventeen years of age. (*PSR* ¶ 49, Doc. 104 at 8.) He was forty-six years old when he was sentenced for the instant offense. (*Id.* at 2.) He has numerous arrests and convictions for crimes of violence, including aggravated battery (*id.* ¶ 50), simple robbery (*id.* ¶ 51), and armed robbery (*id.* ¶ 54). Since Defendant was incarcerated, he has been sanctioned for thirty-eight incidents resulting in the loss of 739 days of good time credit. (*see* Doc. 123-1.) These incidents include possession of drugs and alcohol, refusing to obey an order (five), refusing alcohol or drug tests (ten), possession of dangerous weapons (three), assault (two), fighting (three), and threats to others (one), with his latest incidents occurring on April 29, 2019. (*Id.*) Defendant has demonstrated and continues to demonstrate a lack of respect for the laws that govern our communities as well as the rules and regulations within the penal institutions. Further, his efforts to rehabilitate himself—six programs over twenty-two years (Doc. 116-6)—is, as the Government argues, "hardly impressive or reflective of a sincere devotion to rehabilitation," particularly since the last course was taken "long ago in 2011" (Doc. 123 at 14). In sum, the history and characteristics of this defendant do not warrant release.

Additionally, the nature and circumstances of the offense also weigh against releasing Defendant. The instant offense is extremely troubling and serious. Defendant committed armed robbery of a restaurant (while being a felon) and threatened the owner at gun point by holding a loaded .357 revolver against her forehead. (*PSR* ¶ 8, Doc. 104 at 4.) Defendant then engaged in a high-speed flight in a stolen car that ended with the vehicle entering a crowded parking lot and causing people to jump from the path of the car Defendant was driving. (*Id.* ¶¶ 8–9.) Defendant eventually crashed into a nearby tree, fled on foot, and then was observed approximately three minutes later attempting to commandeer a passing motorist's vehicle. (*Id.* ¶¶ 9–10.) This too demonstrate a considerable lack of respect for both the law and the health and safety of others.

Lastly, "[t]he Court also finds that the sentence imposed should reflect the seriousness of the offense and afford adequate deterrence[.]" *Alexander*, 2020 WL 2468773, at *8. Defendant's sentence of two terms of life imprisonment to be served concurrently was serious, and the Court believes that giving him "compassionate relief would undermine those goals." *Id.* This is particularly true considering that the Defendant has only served about twenty-three years of a life sentence for an extremely serious crime and that releasing Defendant at this point would fail to provide just punishment for the offense. *See Chambliss*, 948 F.3d at 694 (noting that the district court considered these factors under § 3553(a) in denying a motion for compassionate release and finding that the lower court did not abuse its discretion).

Considering all of this information, the relevant 3553(a) factors, and the totality of the circumstances, the Court will exercise it discretion to deny Defendant compassionate release. *See Chambliss*, 948 F.3d at 693–94 (finding no abuse of discretion in district court's denial of compassionate release motion based on the § 3553(a) factors); *Alexander*, 2020 WL 2468773, at

11

*9 (finding that "even if Petitioner had shown an extraordinary and compelling reason, the Court would still exercise its discretion to decline the motion" based on the § 3553(a) factors).

### III. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)* (Doc. 116) filed by Defendant James Charlie Stanley is **DENIED**.

Signed in Baton Rouge, Louisiana, on October 14, 2020.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**